**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DWIGHT PULLEY                                                                                         PLAINTIFF

v.                                              No. 4:11CV00634 KGB

UNITED HEALTH GROUP INCORPORATED                                            DEFENDANT

<u>OPINION AND ORDER</u>

Plaintiff Dwight Pulley filed suit against defendant UnitedHealth Group, Inc. ("UnitedHealth"), alleging violations of Title VII of the Civil Rights Act of 1964 and defamation.   In his complaint, Mr. Pulley also cites the Americans with Disabilities Act ("ADA") and the Genetic Information Nondiscrimination Act ("GINA").   Currently pending before the Court is UnitedHealth's motion for summary judgment (Dkt. No. 68).  Mr. Pulley has responded (Dkt. No. 72), and UnitedHealth has replied (Dkt. No. 73).  For the reasons set out below, the motion for summary judgment is granted.

I.      **FACTUAL BACKGROUND**[1]

In his complaint, Mr. Pulley alleges that UnitedHealth denied him a promotion and terminated his employment because of his race and in retaliation for making an internal complaint.  Mr. Pulley is African American.  In his complaint, he also alleges that UnitedHealth subjected him to a racially hostile work environment and that he was defamed.  Although Mr. Pulley cites the ADA and the GINA, the record – including Mr. Pulley's complaint, response to the motion for summary judgment, and pretrial papers – provides no factual basis for a claim pursuant to the ADA or the GINA.  Further, Mr. Pulley's charge filed with the Equal Employment

---

[1]   The Court notes that these facts are largely derived from UnitedHealth's statement of material facts as to which there is no genuine dispute (Dkt. No. 70).  In response, Mr. Pulley did not file a separate statement of the material facts as to which he contends a genuine dispute exists to be tried.  *See* Local Rule 56.1(b).

Opportunity Commission ("EEOC") did not contain claims or factual support for claims under the ADA or the GINA (Dkt. No. 2, at 23; Dkt. No. 2-1, at 9, 13, 30-32, 35-38).

Mr. Pulley, now a resident of Little Rock, Arkansas, was employed by UnitedHealth in Plymouth, Minnesota, from January 2008 until September 2009. He worked on the night shift as Senior IT Systems Management Analyst. His direct supervisor was Stanley Berscheit, Shift Manager, and his second-level supervisor was Eric Reuteler, Director of IT Systems Operations. Mr. Pulley's primary duties were to monitor UnitedHealth's computer systems and to troubleshoot problems.

UnitedHealth has several corporate policies that relate to the claims and defenses in this case. UnitedHealth maintains a policy against harassment based on race which sets out a procedure by which an employee can report any alleged harassment. UnitedHealth also has a policy that prohibits discrimination in the workplace and provides an internal reporting procedure for employees to make complaints, if they believe they have been discriminated against. UnitedHealth has a non-retaliation policy covering employees who make good-faith reports of harassment or discrimination. UnitedHealth also has a violence-free workplace policy, and employees who violate it are subject to disciplinary action, up to and including termination. These policies are set forth in UnitedHealth's employee handbook, which Mr. Pulley acknowledged was available to him.

In approximately March 2009, there was an opening within Mr. Pulley's department on the day shift. Mr. Pulley sought the day-shift position by expressing his interest to Mr. Berscheit. The parties agree that the day-shift position involved the same job duties and the same compensation; the only difference in the day and night shift positions was the working hours. Mr. Pulley was not awarded the shift change; rather, UnitedHealth awarded the shift

change to Dan Heitke-Felbeck based on his seniority with the company.  Mr. Heitke-Felbeck started with UnitedHealth on November 1, 2006, and he is Caucasian.

UnitedHealth asserts that, when an employee requests an internal shift change, as Mr. Pulley did, the company considers performance, seniority, skills, and business need. United Health requires employees to work within their current position for a minimum of 12 months before seeking a transfer into another position.  That policy does not apply to intra-departmental shift changes that do not involve a change in the employee's position, according to UnitedHealth. Mr. Pulley believes that UnitedHealth's policy requires an employee to work within a department for at least six months before becoming eligible for a shift change.  He maintains that Mr. Heitke-Felbeck was not eligible for the shift change because he did not meet the policy's requirements.  UnitedHealth asserts that Mr. Pulley is mistaken.

In late April 2009, Casey Mosher, also a Senior IT Systems Management Analyst, worked several nights per week on the same shift as Mr. Pulley.  Mr. Mosher is Caucasian.  In early May 2009, Mr. Mosher approached Mr. Pulley's computer while Mr. Pulley was away from his desk, accessed the internet browser, and typed in the address for what is believed to be a pornographic store's website.  Mr. Pulley had not locked his computer when he stepped away from his desk before Mr. Mosher accessed it.  When Mr. Pulley returned and discovered what Mr. Mosher had done, Mr. Pulley became angry because he feared disciplinary action.  Mr. Pulley promptly reported Mr. Mosher's conduct to Mr. Berscheit.  Mr. Pulley did not mention race or discrimination in this complaint to Mr. Berscheit.  Mr. Pulley met with Mr. Berscheit and Mr. Reuteler regarding the incident and, on May 18, 2009, complained about Mr. Mosher's conduct to human resources.  Mr. Pulley admits that he never complained to anyone at UnitedHealth that the incident was racially motivated (Dkt. No. 71-1, at 18-19).  Mr. Mosher

3

submits an affidavit stating that his conduct was not because of Mr. Pulley's race but rather was intended as a joke (Dkt. No. 71-4, at 3).

UnitedHealth investigated Mr. Mosher's conduct and found that he did inappropriately access Mr. Pulley's computer. Mr. Berscheit advised Mr. Pulley and Mr. Mosher that they had both acted inappropriately—Mr. Mosher for typing an inappropriate address into Mr. Pulley's computer and Mr. Pulley by not locking his computer when he stepped away from his desk. Mr. Mosher was placed on a corrective action plan; Mr. Pulley was not disciplined over this incident.

During the investigation of Mr. Mosher's conduct, Mr. Mosher reported to Mr. Berscheit and Mr. Reuteler that Mr. Pulley had threatened Mr. Mosher with violence at work. Mr. Pulley denies he did this. UnitedHealth investigated this claim. Two employees, Jamie Dooley and Lisa Althaus, told Mr. Berscheit and Mr. Reuteler that they heard Mr. Pulley threaten Mr. Mosher with violence in the parking lot. On May 20, 2009, "based on independently verified information," UnitedHealth placed Mr. Pulley on a final warning and corrective action plan for violations of the violence-free workplace policy (Dkt. No. 70, at 6).

Mr. Pulley last reported to work on May 25, 2009. Mr. Pulley requested and was approved for leave under the Family and Medical Leave Act ("FMLA") for a serious medical condition. His leave was set to run from May 26, 2009, through July 20, 2009. Mr. Pulley stated at his deposition in this case that he does not recall the circumstances surrounding his FMLA leave. Specifically, he does not recall requesting FMLA leave (Dkt. No. 71-1, at 27-30). The record indicates that Mr. Pulley was mailed a detailed letter approving FMLA leave (See Dkt. No. 71-13, at 2-3). The letter indicates that a request for an extension of his leave based on a serious medical condition would require "an additional health care provider certification" (Dkt. No. 71-13, at 2). The letter goes on to state that, if the employee does not return to work at the

end of his leave, and does not request an extension before the leave expires, the employee "may be terminated for job abandonment" (Dkt. No. 71-13, at 2). According to UnitedHealth, on July 22, 2009, Mr. Pulley requested an extension of his FMLA leave, but, according to UnitedHealth and Mr. Berscheit, Mr. Pulley "failed to respond to repeated requests for medical documentation substantiating his need for additional leave" (Dkt. No. 70, at 6; Dkt. No. 71-2, at 6-7). Mr. Pulley stated that he does not recall requesting that extension (Dkt. No. 71-1, at 29).

Mr. Pulley did not return to work at the end of his approved FMLA leave. As a result, UnitedHealth terminated Mr. Pulley's employment effective September 3, 2009. UnitedHealth internally coded Mr. Pulley's termination as a "voluntary resignation" (Dkt. No. 70, at 8). Mr. Pulley stated that he does not know who made the decision to terminate his employment.

On June 16, 2009, Mr. Pulley filed a charge of discrimination with the EEOC. In his charge, he alleged that he was subjected to a racially hostile work environment, was denied a shift transfer based on his race, was disciplined in retaliation for complaining about Mr. Mosher's conduct, and was terminated due to race discrimination and retaliation.

In his current lawsuit, Mr. Pulley alleges that he was subjected to a racially hostile work environment. He cannot remember ever hearing a member of management make an offensive racial comment (Dkt. No. 71-1, at 32). Mr. Pulley identifies two instances of race-related comments by coworkers. First, he testified that he heard a coworker tell ethnic jokes, but he could not recall any of the jokes (Dkt. No. 71-1, at 25). Second, Mr. Pulley testified that, after he was denied the shift transfer, a coworker told him that he was "just another Black man looking for a break" (Dkt. No. 71-1, at 33-34). He could not remember any other racial comments made in the workplace (Dkt. No. 71-1, at 34).

Mr. Pulley's lawsuit alleges that he was denied the shift transfer based on his race.  Mr. Pulley believes that UnitedHealth's policy requires an employee to work within a department for at least six months before becoming eligible for a shift change.  UnitedHealth denies this.  There is no dispute that the transfer Mr. Pulley sought was lateral in nature.  Next, Mr. Pulley alleges that he was disciplined by being put on a corrective action plan and eventually terminated in retaliation for reporting Mr. Mosher's conduct.  UnitedHealth states that Mr. Pulley's termination was unrelated to the corrective action plan and also notes that Mr. Pulley did not suffer a loss in pay or benefits as a result of being placed on the corrective action plan.  Mr. Pulley also claims that his termination was due to race discrimination but stated at his deposition that he had "no idea" why his employment was terminated because of his race (Dkt. No. 71-1, at 35-36).  Mr. Pulley testified that, during his employment at UnitedHealth, he "never raised any complaint due to my race to any of my managers" (Dkt. No. 71-1, at 12).

Finally, Mr. Pulley asserts a defamation claim based on the allegation that Mr. Mosher falsely accused him of threatening violence and that Mr. Reuteler and Mr. Berscheit called Mr. Pulley a liar and a radical in a May 2009 meeting during which his UnitedHealth supervisors discussed with him a corrective action plan for violations of the violence-free workplace policy. This claim is based solely on words spoken to Mr. Pulley, not written words.

## II.     STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). "Because summary judgment is not disfavored and is designed for every action, [Eighth Circuit] panel statements to the contrary are unauthorized and should not be followed." *Id.*

### III. ANALYSIS

Mr. Pulley brings a number of claims under Title VII. UnitedHealth in its moving papers addresses four separate Title VII claims: (1) discriminatory failure to promote; (2) discriminatory termination; (3) retaliation; and (4) harassment or hostile work environment. UnitedHealth also addresses Mr. Pulley's claim for defamation under Arkansas law. Mr. Pulley has not disputed UnitedHealth's construction of his causes of action. Accordingly, the Court addresses his four Title VII claims in turn, as well as his defamation claim.

Mr. Pulley can establish a *prima facie* claim of race discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson*, 643 F.3d at 1043-44. Therefore, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. *Id.* A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial. *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

A.     **Title VII Claims**

1.     **Direct Evidence Analysis**

"To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Missouri Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation omitted). "[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Rivers-Frison*, 133 F.3d at 619. Rather, "[d]irect evidence of

employment discrimination must have some connection to the employment relationship." *Id.* "Direct evidence of racial discrimination is not established by mere 'stray remarks in the workplace, statements by nondecision-makers, or statements by decision-makers unrelated to the decisional process itself.'" *Yates v. Douglas*, 255 F.3d 546, 549 (8th Cir. 2001) (citing *Beshears v. Asbill*, 930 F.2d 1348, 1354) (8th Cir. 1991)).

There is no evidence that the remarks Mr. Pulley describes were statements by decision-makers.  Even assuming the individuals who made the remarks Mr. Pulley describes were decision-makers, there is no indication that the remarks were related to the decisions to deny Mr. Pulley's requested shift transfer, to discipline him, or to terminate his employment.  Mr. Pulley testified that he heard coworkers tell ethnic jokes, but he could not recall any of the jokes (Dkt. No. 71-1, at 25).  He also testified that, after he was denied the shift transfer, a coworker told him that he was "just another Black man looking for a break" (Dkt. No. 71-1, at 33-34).  Mr. Pulley could not remember any other racial comments made in the workplace (Dkt. No. 71-1, at 34).

The remarks he describes amount to, at most, "stray remarks in the workplace, statements by nondecision-makers, or statements by decision-makers unrelated to the decisional process itself." *Yates*, 255 F.3d at 549.  There is no record evidence that demonstrates these remarks reflect a "discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Id.* (quoting *Rivers-Frison*, 133 F.3d at 619).

For these reasons, the Court concludes that Mr. Pulley has not produced sufficient direct evidence of discrimination to overcome summary judgment.  Accordingly, the Court will proceed through the *McDonnell Douglas* analysis for Mr. Pulley's Title VII claims.

2. *McDonnell Douglas* **Analysis**

Under the *McDonnell Douglas* analysis, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *McGinnis v. Union Pac. R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007). If a plaintiff makes out a *prima facie* case, he creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions. *Id*. "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." *Id.*

a. **Failure to Promote**

Mr. Pulley alleges a failure-to-promote claim by asserting that UnitedHealth denied him a transfer to the day shift. "To establish a *prima facie* case of racial discrimination in a failure-to-promote claim, a plaintiff must show (1) [he] is a member of a protected group; (2) [he] was qualified and applied for a promotion to an available position; (3) [he] was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007).

Of course, "[t]o bring a cause of action under Title VII, a plaintiff must allege that he has suffered adverse employment action." *Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973 (8th Cir. 1998). The Eighth Circuit has made clear that "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not."

*Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (internal citations omitted).

For Mr. Pulley's allegations to be actionable, he must have suffered an adverse employment action. He claims that UnitedHealth's denying him a transfer from the night shift to the day shift is an actionable adverse employment action. This Court disagrees.

A "*purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, otherwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (internal citation and quotations omitted). "Logic suggests that, if making a purely lateral transfer cannot constitute adverse employment action, then *failure to make* a purely lateral transfer also would not constitute adverse employment action." *Hennick v. Schwans Sales Enters., Inc.*, 168 F. Supp. 2d 938, 954 (N.D. Iowa 2001) (internal citation and quotations omitted). Whether the failure to make a purely lateral transfer constitutes adverse employment action "should presumably be measured by the same considerations applied to whether or not making such a change against an employee's wishes constituted adverse employment action." *Id.* (internal quotation omitted).

UnitedHealth asserts that Mr. Pulley sought "nothing more than a lateral shift transfer" (Dkt. No. 69, at 7). Mr. Pulley testified at his deposition that there was no difference in pay between the day shift and the night shift (Dkt. No. 71-1, at 10). Discussing the differences in the two shifts, Mr. Pulley stated that the only difference in the day shift and the night shift was that the two had "[d]ifferent hours" (Dkt. No. 71-1, at 10). When asked why he wanted to move to

the day shift, Mr. Pulley stated, "I think everyone likes to work days as opposed to nights" (Dkt. No. 71-1, at 10).   Mr. Pulley provides no evidence or argument that the change in shift would have resulted in more seniority, responsibility, authority, compensation, or benefits.   Likewise, Mr. Pulley does not indicate that the transfer would have significantly affected his future career prospects.   To the contrary, Mr. Pulley notes in in complaint that he requested a "lateral move to day shift" (Dkt. No. 2, at 2, 9).   His EEOC charge also indicates that this was a "lateral transfer" (Dkt. No. 2, at 23).

For these reasons, the Court concludes there is no actionable adverse employment action within the meaning of Title VII to support Mr. Pulley's failure-to-promote claim.   Mr. Pulley sought a lateral transfer to the day shift and denial of that transfer does not rise to the level of a materially adverse employment action.   *See Ledergerber*, 122 F.3d at 1144.   *See also McGowan v. City of Eufala*, 472 F.3d 736, 742-43 (10th Cir. 2006) (concluding that an employer's denying an employee a requested change to the day shift was not an actionable materially adverse employment action).   Accordingly, Mr. Pulley's failure-to-promote claim fails as a matter of law.

### b.   Termination

The Court next considers whether, under the *McDonnell Douglas* approach, Mr. Pulley's discriminatory termination claim can survive summary judgment.   Mr. Pulley "bears the burden of establishing a *prima facie* case of discrimination."   *McGinnis*, 496 F.3d at 873.

"To create an inference of discrimination [Mr. Pulley] must establish a *prima facie* case, which requires proof that [he] (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful. . . race discrimination."   *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050 (8th Cir. 2013).   If a plaintiff makes out a *prima facie* case, he creates a presumption of unlawful

discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions. *McGinnis*, 496 F.3d at 873. "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." *Id.*

Mr. Pulley cannot make out a *prima facie* case of discrimination here. "A plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. NuAire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010)). Even drawing all inferences in Mr. Pulley's favor, he has failed to satisfy the fourth prong; he has not provided facts that give rise to an inference of unlawful race discrimination. He has not identified any similarly situated employee who is not in his protected class who was treated differently than he was. He has not provided any facts, such as biased comments by a decision-maker, that give rise to an inference of discrimination. Therefore, the Court finds that Mr. Pulley has failed to make out a *prima facie* case of discriminatory termination.

Even if he could make out a *prima facie* case of discrimination, Mr. Pulley has not demonstrated on this record a genuine issue of material fact that UnitedHealth's legitimate, nondiscriminatory reason for terminating him was pretext for race discrimination. UnitedHealth's burden to demonstrate that it terminated Mr. Pulley for a legitimate, nondiscriminatory reason "is not onerous." *Bone*, 686 F.3d at 954. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Id.* at

13

955 (internal quotation omitted).  Defendants need only proffer a good-faith reason for their action.  *Id.*

Here, UnitedHealth has provided a legitimate, nondiscriminatory reason for terminating Mr. Pulley.  UnitedHealth asserts that it terminated Mr. Pulley because, following the expiration of his FMLA leave, he did not (1) respond to requests for medical documentation substantiating his need for additional leave or (2) return to work.  Mr. Pulley's FMLA leave was set to end on July 20, 2009.  UnitedHealth asserts that Mr. Pulley requested an extension of his FMLA on July 22, 2009, but did not respond to repeated requests to provide medical documentation substantiating the need for an extension.  Mr. Pulley also did not return to work.  UnitedHealth terminated Mr. Pulley's employment effective September 3, 2009.  UnitedHealth internally coded Mr. Pulley's termination as a voluntary resignation.  The Court finds that UnitedHealth has met its burden to prove that it terminated Mr. Pulley for a legitimate, nondiscriminatory reason.  *See Hines v. Metro Work Center, Inc.*, No. CIV. 991971DSDJMM, 2001 WL 705886, *4 (D. Minn. June 19, 2001) (determining that, because plaintiff took no action to return and did not inform his employer that he intended to return to work after an approved leave of absence, plaintiff's termination constituted a voluntary separation on his part, not a discriminatory constructive discharge).

The Court next examines whether Mr. Pulley has met his burden of demonstrating a material question of fact as to pretext.  "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext."  *Torgerson*, 643 F.3d at 1047.  First, "[a] plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact.  Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer."  *Id.*  In this sense, Mr. Pulley's burden of

establishing pretext would merge "with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Id.* at 1046.

In response to the motion for summary judgment, Mr. Pulley has not created a material question of fact as to pretext.  There is no indication in the record that UnitedHealth's reason for Mr. Pulley's termination is unworthy of credence because it has no basis in fact.  At his deposition, Mr. Pulley could recall very little of the circumstances surrounding his FMLA leave.  He denies requesting FMLA or an extension to that leave.  He seems to suggest that he was placed on leave because of a form his doctor filled out and sent to UnitedHealth.  Mr. Pulley states that UnitedHealth sent his doctor a letter, but he does not know how UnitedHealth would have gotten his doctor's contact information.  These facts, even viewed in the light most favorable to Mr. Pulley, do not demonstrate pretext.

Mr. Pulley does not indicate that his race played any role in his leave or termination.  Mr. Pulley has not demonstrated that a prohibited reason more likely motivated UnitedHealth than its proffered reason for terminating him.  Finally, Mr. Pulley points to no comparators to demonstrate pretext.  Thus, even if Mr. Pulley could make out a *prima facie* case of discriminatory termination, he could not avoid summary judgment because he has not cited to proof in the record sufficient to create a genuine issue of material fact as to whether UnitedHealth's proffered legitimate, nondiscriminatory reason for terminating him was pretext for race discrimination.  In sum, Mr. Pulley's discriminatory termination claim under Title VII fails, and UnitedHealth is entitled to summary judgment on this claim.

### c.      Retaliation

Mr. Pulley also alleges retaliation.  To establish such a claim, Mr. Pulley must demonstrate that:  (1) he engaged in a protected activity, (2) UnitedHealth's adverse employment

action caused injury that would "chill a person of ordinary firmness" from continuing that activity, and (3) there was a causal connection between the two. *Hill v. City of Pine Bluff, Arkansas*, 696 F.3d 709, 715 (8th Cir. 2012); *Hoffman v. Rubin*, 193 F.3d 959 (8th Cir. 1999). The Eighth Circuit Court of Appeals has held that, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999).

The Court determines, as UnitedHealth asserts, that Mr. Pulley has not engaged in any statutorily protected activity. Mr. Pulley did not raise a race-discrimination complaint to any of his managers. He did not complain to UnitedHealth officials that the corrective action plan he received was based on alleged race discrimination. He admits that he did not raise "any complaint due to [his] race to any of [his] managers" (Dkt. No. 71-1, at 12). The Eighth Circuit has held that an employee does not engage in statutorily protected activity, and thus does not make out a *prima facie* case of Title VII retaliation, when the employee makes an internal complaint but does not attribute the company's complained-of actions to discrimination. *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028-29 (8th Cir. 2002) ("While Hunt complained that she was entitled to a pay increase and a change in job title, she did not attribute NPPD's failure to give her a raise or a promotion to sex discrimination. Thus, Hunt was not engaged in a protected activity for the purposes of Title VII and consequently did not establish a *prima facie* case of retaliation."). Mr. Pulley did not engage in statutorily protected activity. For this reason, his retaliation claim does not survive summary judgment.

To the extent that Mr. Pulley argues that his termination was retaliatory, that claim fails. Specifically, Mr. Pulley has not presented evidence that his termination was a pretext for

retaliation. Therefore, under the *McDonnell Douglas* burden-shifting framework, Mr. Pulley is unable to overcome UnitedHealth's legitimate, nondiscriminatory reason for terminating Mr. Pulley. For all of these reasons, UnitedHealth is entitled to summary judgment on Mr. Pulley's retaliation claim.

### d.    Hostile Work Environment

Mr. Pulley's claim for harassment or hostile work environment also fails. Hostile work environment harassment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotations omitted). "To state a claim for hostile environment harassment by non-supervisory co-workers, [the plaintiff] must establish: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and [his] membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

The Court finds that Mr. Pulley has not offered sufficient proof to meet the standard set out in *Harris*. 510 U.S. at 21. The incidents of race-related jokes or remarks identified by Mr. Pulley do not demonstrate that his workplace was "permeated" with insult or ridicule. Even aside from the *Harris* standard, Mr. Pulley cannot state a claim for hostile work environment because the record is devoid of any indication that any alleged harassment affected a term, condition, or privilege of Mr. Pulley's employment. His claim also fails because it is undisputed that Mr. Pulley did not make management aware of harassment based on race during his

17

employment with UnitedHealth.  Without knowledge or notice, UnitedHealth could not take remedial action.  For all of these reasons, Mr. Pulley's hostile-work-environment claim fails as a matter of law, and UnitedHealth is entitled to summary judgment.

### B.     Defamation

Mr. Pulley's defamation claim is time barred.  Mr. Pulley bases this claim on spoken words, not written words.  An action "for words spoken slandering the character of another" must be commenced within one year after the cause of action accrues.  Ark. Code. Ann. § 16-56-104(3).  Mr. Pulley claims that he was defamed when Mr. Reuteler and Mr. Berscheit called him a liar and a radical.  Mr. Pulley also claims he was defamed when Mr. Mosher accused him of threatening violence.  He alleges that these statements took place in May 2009.  Mr. Pulley filed this lawsuit on August 18, 2011.  Accordingly, his claim for defamation, or more appropriately slander based on spoken words, is time barred, and UnitedHealth is entitled to summary judgment on Mr. Pulley's defamation claim.

### C.     ADA and GINA

In its motion for summary judgment, UnitedHealth "respectfully requests that the Court enter summary judgment in its favor on all of Plaintiff Dwight Pulley's claims" (Dkt. No. 68, at 4).  UnitedHealth specifically identified Title VII claims and a claim for defamation under Arkansas law as being pleaded by Mr. Pulley.  Mr. Pulley did not dispute UnitedHealth's construction of his causes of action.  Therefore, it is unclear to this Court whether Mr. Pulley intended to assert any other causes of action.

Because Mr. Pulley is *pro se*, however, this Court must liberally construe his complaint. *Norman v. Schuetzle*, 585 F.3d 1097, 1117 (8th Cir. 2009) *overruled on other grounds by McCrary v. Baldwin*, 500 Fed. App'x. 551 (8th Cir. 2013).  Therefore, the Court will address the

ADA and the GINA since those statutes are cited by Mr. Pulley in his complaint.  The court's liberal construction of Mr. Pulley's complaint does not extend to allowing defective and insufficiently pled claims to proceed.  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaint must allege facts sufficient to support the claims advanced); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); *Kaylor v. Fields*, 661 F.2d 117, 1183 (8th Cir. 1981) ("[P]leadings. . . brought *pro se* [] are to be liberally construed.  . . . But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.").  Although Mr. Pulley cites the ADA and the GINA, the record – including Mr. Pulley's complaint, response to the motion for summary judgment, and pretrial papers – provides no factual basis for a claim pursuant to the ADA or the GINA.  Further, Mr. Pulley's charge filed with the EEOC did not contain claims or factual support for claims brought under the ADA or the GINA (Dkt. No. 2, at 23; Dkt. No. 2-1, at 9, 13, 30-32, 35-38).  For these reasons, on UnitedHealth's motion, the Court dismisses Mr. Pulley's claims under the ADA and the GINA, to the extent he intended to allege such claims.

## IV.    Conclusion

UnitedHealth is entitled to summary judgment on Mr. Pulley's Title VII claims, including claims for failure to promote, discriminatory termination, retaliation, and hostile work environment.   UnitedHealth also is entitled to summary judgment on Mr. Pulley's defamation or slander claim.  Accordingly, UnitedHealth's motion for summary judgment is granted (Dkt. No. 68), and Mr. Pulley's Title VII and slander claims are dismissed with prejudice.   The Court dismisses Mr. Pulley's claims under the ADA and the GINA, to the extent he intended to allege such claims.  Judgment will be entered accordingly.

Based on the Court's ruling on UnitedHealth's motion for summary judgment, UnitedHealth's motion to continue trial and related deadlines is denied as moot (Dkt. No. 77). Mr. Pulley submitted several trial subpoenas to the Clerk of Court. In accordance with this Court's Order dated April 19, 2013, the Clerk of Court transmitted those subpoenas to the United States Marshals Service ("USMS") for service (Dkt. No. 76). Those subpoenas are now moot, and the USMS is directed not to proceed with the service of those subpoenas.

*   *   *

For the reasons discussed above, UnitedHealth's motion for summary judgment is granted (Dkt. No. 68). UnitedHealth's motion to continue trial and related deadlines is denied as moot (Dkt. No. 77). The trial subpoenas submitted by Mr. Pulley are moot, and the USMS is directed not to serve those subpoenas.

SO ORDERED this the 10th day of May, 2013.

Kristine G. Baker
United States District Judge